UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JERMAINE ARMSTRONG,

                Plaintiff,                        No. 12-10276

vs.                                    District Judge Marianne O. Battani

SCIS AIR SECURITY,               Magistrate Judge R. Steven Whalen

                Defendant.

_____ /

## REPORT AND RECOMMENDATION

On January 1, 2012, Plaintiff Jermaine Armstrong filed a *pro se* civil complaint alleging that he was terminated from his employment at Defendant SCIS Air Security ("SCIS") on the basis of his race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, *et seq.*, and the Elliot-Larsen Civil Rights Act ("ELCRA"), M.C.L. § 37.2101, *et seq.* Before the Court is Defendant's Motion for Summary Judgment [Doc. #31], which has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that the Motion be GRANTED.

## I.    FACTS

Plaintiff claims employment discrimination based on race. *Complaint*, ¶ 10. In a narrative, in the form of a letter attached to his complaint, he states that he was hired by SCIS on November 18, 2010, and that he was "repeatedly disciplined, discharged, and

-1-

subjected to other terms and conditions of employment by SCIS Air Security due to my race." He further alleges that he "was suspended and fired because I said that I would seek legal advice for the four unjust disciplines that I was wrongly given." The Plaintiff alleges that he was subject to the following disciplinary actions:

(1) He received a verbal warning for poor attendance. He alleges that he "was the only African American among those that were late and the only one disciplined."

(2) Facial and Uniform violation. Plaintiff alleges that Sue Varga ordered him to shave his beard, and refused to accept a doctor's note stating that Plaintiff had a skin condition "that is common among African American men" that prevented him from shaving safely. As a result, Plaintiff shaved and suffered "bumps, scars, and infections" on his face.

(3) He was disciplined for failing to provision a flight.

(4) He was accused of not preparing a Vehicle Inspection Report ("VIR") prior to taking out a company vehicle.

(3) He was accused sending harassing emails to a white female co-worker named Dana. The complaint alleges that "Dana's statements were completely false and the text messages that SCIS submitted as evidence were fabricated because I did not send them...."

Plaintiff also alleges that his employee badge was taken and he was suspended from February 12, 2011 through February 14, 2011, and fired on February 14, 2011. He also claims that Sue Varga stated, "You people have to work so hard," which he construes

2:12-cv-10276-MOB-RSW   Doc # 50   Filed 03/03/14   Pg 3 of 14   Pg ID 809

as a racist comment.

Plaintiff was deposed on February 26, 2013.  His deposition transcript is contained at Defendant's Exhibit A, appended to its brief [Doc. #31].  He testified that he was hired at SCIS by Sue Varga. *Plaintiff's deposition*, 70.  As a new employee, he was placed on a 90-day probationary period, and during that period, he regularly met with Varga and James Feliciano, another manager, to discuss performance issues.  *Id*. 79-80.  Plaintiff testified that he was tardy on November 29, 2010, and that he was the only employee who was late to work on that day.  *Id.* 76, 81-82.

On January 6, 2011, Plaintiff received a "verbal counseling" for violating the company's no-beard policy. Although he alleges a medical necessity, he conceded that from the date of his hire through January 6, 2011, he in fact shaved his beard in accordance with the policy.  *Id*. 87.  When he shown a photograph of himself with a clean-shaven face, he claimed that it had been photo-shopped.  *Id*. 71.

On January 21, 2011, Plaintiff received a final written warning for failing to timely provision a flight. *Id*. 94-95.  His probationary period was extended, and six days later, on January 27, 2011, Plaintiff received a disciplinary letter for operating a company vehicle without having a witness inspect the vehicle and complete a VIR.  *Id*. 99-100.  Plaintiff conceded that it was his responsibility to get a witness to sign off on the VIR.  *Id*.

At his deposition, and contrary to what he alleged in his complaint, Plaintiff admitted that on February 4, 2011, he sent an email to Dana Christensen, a co-worker, with a photograph of her car, and followed up with text messages that said, "Was it a

-3-

Pontiac Vibe with a girl wearing a red coat on Merriman going north on a snowy day.

IDK. Most Money Ever," and " I everywhere you are. Don't be scared. Be careful. I am

he. Most Money Ever." *Id*. 105. Plaintiff testified that he sent the emails not to scare

Christensen, but to "let her know to be aware that I know that she's spreading rumors."

*Id*. 106. Armstrong also testified that "Most Money Ever" was the name of an advertising

business that he owned. *Id*. 62-64.

Sue Varga's affidavit is contained in Defendant's Exhibit B. She is the Manager

of SCIS at Detroit Metro Airport. She states that all employees at SCIS are subject to a

90-day probationary period, during which time they are at-will employees. *Varga*

*Affidavit* ¶¶ 8-10. She and James Feliciano supervised Plaintiff from the date of his hire

through February 15, 2011. *Id*. ¶ 11. She states that because Plaintiff's scheduling

conflicted with his second job, he did not have his first probationary meeting until

December 10, 2011, where it was noted that he was tardy once, in violation of the

attendance requirements of the jog. *Id*. ¶¶ 17-18. Varga states that during the

probationary period, the company's progressive attendance policy does not apply, and

that during the probationary meetings, the employee's attendance issues are discussed

without regard to race. She states that Dana Christensen, a white female, was verbally

counseled during her probationary period for being tardy. *Id*. ¶¶ 19-20.

Varga states that on January 6, 2013, she issued Plaintiff a verbal corrective action

for having an "unkempt beard." The no-beard policy applies equally to Caucasian and

African American employees. *Id*. ¶ 21. Varga states that "[d]uring Armstrong's

-4-

employment with the company, Armstrong did not try to submit medical documentation that would excuse him from the no-beard policy." *Id. ¶* 22. The medical documentation that Plaintiff submitted with his complaint is dated May 9, 2011, after he was fired. Another employee, Theodore Gorack, is exempted from the no-beard policy not because of his race, but because he was hired before the policy was adopted. Gorack would also be entitled to a religious exemption, although he is required to wear a beard guard. *Id*. ¶ 23.

Part of Plaintiff's job was to service and change the batteries on the hand-held devices used by the flight attendants to process credit card payments. Varga states that this service is to be performed as soon as possible, and before passengers board a plane. She was informed on January 21, 2011, that Plaintiff had failed to provision a flight before the passengers barded. Plaintiff was seen walking past the plane, and not returning until after the passengers had boarded. *Id*. ¶¶ 24-25. As a result of this incident, Plaintiff was issued a final warning, and his probationary period was extended to March 18, 2011. *Id*. ¶ 26.

On January 27, 2011, Varga placed a letter in Plaintiff's file for having failed to follow company procedures on VIRs. *Id*. ¶¶ 27-28. Regarding the text message incident with Dana Christensen, the matter was investigated by Human Resources Director Becky Caudill-Turner. Christensen herself was issued a final written warning, and Armstrong was suspended on or about February 12, 2011, pending further review. On February 15, 2011, Varga informed Plaintiff that he was being terminated, and she returned his security

badge to the Wayne County Airport Authority.  *Id.* ¶¶ 29-37.

Thomas McDonald is the District Manager for SCIS.  His affidavit is contained in Defendant's Exhibit D. Regarding the Dana Christensen text messaging incident, he states that he learned from the Human Resources Manager's investigation that Christensen had admitted to gossiping about Armstrong in the workplace.  He agreed with Caudill-Turner that both Plaintiff and Christensen had violated the company's anti-harassment policy, but that Plaintiff's conduct was more serious "since it involved direct harassment of a coworker as well as threat to a coworker." *McDonald Affidavit*, ¶ 12. Christensen was issued a final warning letter, but Plaintiff was suspended pending further review.  *Id.* ¶ 13.

Ultimately, McDonald formed the belief that Plaintiff's employment should be terminated based on the fact that he was a probationary employee, that he violated the company's anti-harassment policy, and that he had a history of poor performance.  *Id.* ¶¶ 14, 16.  McDonald states that his decision was not based on race or any prior complaints made by Plaintiff.  *Id.* ¶ 17.


## II.    STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c).  To prevail on a motion for summary

judgment, the non-moving party must show sufficient evidence to create a genuine issue

of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990).

Drawing all reasonable inferences in favor of the non-moving party, the Court must

determine "whether the evidence presents a sufficient disagreement to require submission

to a jury or whether it is so one-sided that one party must prevail as a matter of law."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202

(1986). Entry of summary judgment is appropriate "against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*,

477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the "record taken as a

whole could not lead a rational trier of fact to find for the nonmoving party," there is no

genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v.

Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).


### III.    ANALYSIS

### A.    Discrimination

Where, as here, an employment discrimination case is based on circumstantial

evidence,[1] the burden-shifting approach first set forth in *McDonnell Douglas Corp. v.*

---

[1] Varga's alleged remark that "you people have to work so hard" does not
constitute direct evidence of discrimination. *See Arnold v. Marous Bros. Const., Inc.*, 211

*Green*, 411 U.S. 792, 93 S.Ct. 1817, 37 L.Ed.2d 668 (1973), applies. *See Johnson v. Kroger Co.*, 319 F.3d 858, 865-66 (6ᵗʰ Cir. 2003). An employment discrimination case under ELCRA is analyzed under the same framework as an analogous claim under Title VII. *Sutherland v. Michigan Dept. of Treasury,* 344 F.3d 603, 614 (6ᵗʰ Cir. 2003); *Cox v. Electronic Data Systems Corp.*, 751 F.Supp. 680, 690 (E.D. Mich. 1990); *Nixon v. Celotex Corp.*, 693 F.Supp. 547, 553-54 (W.D. Mich. 1988). Under the *McDonnell Douglas* framework, a plaintiff must present a prima facie case of unlawful discrimination. Once she or he has done so, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for taking the challenged action. *Johnson v. University of Cincinnati*, 215 F.3d 561, 573 (6ᵗʰ Cir. 2000).[2] If the defendant satisfies that burden, the plaintiff must then prove, by a preponderance of the evidence, that the proffered reason for the defendant's actions is not the true reason, but rather a pretext for discrimination.

In order to establish a prima facie showing of racial discrimination, Plaintiff must introduce sufficient evidence that (1) he was a member of the protected class, (2) he suffered an adverse employment action, (3) he was qualified for the position, and (4) the adverse action was taken under circumstances giving rise to an inference of unlawful

---

Fed.Appx. 377 (6ᵗʰ Cir. 2006). Moreover, Varga was Plaintiff's supervisor, but it was McDonald, not she, who was the decision-maker in Plaintiff's termination.

[2]This is a burden of production. *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 868 (6ᵗʰ Cir. 2001).

discrimination.  *McDonnell Douglas, supra,* 411 U.S. at 802; *Hazle v. Ford Motor Co.*, 464 Mich. 456, 463, 628 N.W.2d 515 (2001). The last factor is generally shown by evidence that the plaintiff was "treated differently from similarly situated individuals outside of [the] protected class." *Smith v. City of Salem, Ohio,* 378 F.3d 566, 570 (6th Cir. 2004)(*citing Perry v. McGinnis,* 209 F.3d 597, 601 (6th Cir.2000)); *McDonnell Douglas,* 411 U.S. at 802, 1824.  In comparing treatment with "similarly situated" individuals, a plaintiff "must show that the 'comparables' are similarly situated in all respects." *Mitchell v. Toledo Hospital*, 964 F.2d 577, 583 (6th Cir. 1992), that is, that the comparables must be "nearly identical" in all relevant aspects. *Town v. Michigan Bell Telephone Co.*, 455 Mich. 688, 700, 568 N.W.2d 64 (1997).

Plaintiff's Title VII and ELCRA claims fail at the prima facie stage. Clearly Plaintiff is a member of a protected class, and clearly he suffered an adverse employment decision when he was fired.  I will assume, for purposes of this discussion, that he was qualified for the job, notwithstanding his poor performance and his status as a probationary employee. However, he has presented no evidence, no affidavit, and no exhibits suggesting that his firing or any other disciplinary actions were based on race. He has not identified one other similarly situated employee who was treated differently. While he was counseled for being tardy, he concedes that he was the only employee who was tardy on November 29, 2010. He was not fired for that incident.  Moreover, Christensen, a white female, received exactly the same notation on her employee meeting form when she was tardy during her probationary period. Christensen was also

-9-

disciplined for her role in the text message incident.

As to the no-beard policy, Theodore Gorack, a white male, was not similarly situated, because he was "grandfathered" out of the policy by virtue of having been employed prior to its enactment. He also had a religious exemption. Plaintiff, who now claims a medical exemption, was clean-shaven from the date of his hire to January 6, 2011. His testimony that a picture of him without a beard was photo-shopped is purely speculative. Moreover, the only evidence Plaintiff has submitted to rebut Varga's and McDonald's sworn statements that he never provided medical documentation is a doctor's note dated well after he was terminated.

Plaintiff concedes that he violated numerous company policies—he was tardy, he failed to timely provision a plane, he failed to obtain a VIR prior to taking out a vehicle. And while in his complaint he completely denied sending the ominous text messages to Christensen ( "Dana's statements were completely false and the text messages that SCIS submitted as evidence were fabricated because I did not send them...."), he completely reversed course and admitted at his deposition that he sent them, although he attempted to minimize and excuse his actions. Plaintiff has offered excuses for all of his violations, but he has not offered any evidence whatsoever that would remotely suggest that he was disciplined or fired on account of race.

Moreover, even if we generously assume that Plaintiff has made out a prima facie case, Defendant has shown, based on Plaintiff's many violations of company policy and his probationary status, that the decision to fire him was based on non-discriminatory

factors.

Under the third prong of *McDonnell Douglas*, the burden would then shift back to Plaintiff to show that the Defendant's stated reasons are pretextual. He may meet that burden by showing (1) that the proffered reason had no basis in fact, (2) that the proffered reason did not actually motivate the decision, or (3) that the proffered reason was not sufficient to motivate the decision. *Smith v. Leggett Wire Co.,* 220 F.3d 752, 759 (6th Cir. 2000) (citing *Manzer v. Diamond Shamrock Chem. Co.,* 29 F.3d 1078, 1084 (6th Cir.1994)). As to the first factor, Plaintiff has admitted to the transgressions of policy, so there was a basis in fact for Defendant's decision. As to the third factor, the proffered reasons for Plaintiff's termination–his probationary status, his poor performance, and his violation of the anti-harassment policy–were clearly sufficient to justify his termination.

This leaves the third factor–that the proffered reasons are pretextual, and the real reasons were based on racial discrimination. And what has Plaintiff offered to support that conclusion, apart from his own speculation and belief? Nothing.

On these facts, no rational jury could possibly find in Plaintiff's favor. Summary judgment should be granted on the Title VII and ELCRA claims.

## B.   Retaliation

"A prima facie case of retaliation requires a plaintiff to establish that (1) []he engaged in activity protected by Title VII; (2) this exercise of protected rights was known to defendant; (3) defendant thereafter took adverse employment action against the

plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment." *Garner v. Cuyahoga County Juvenile Court*, 554 F.3d 624, 639 (6ᵗʰ Cir. 2009), citing *Morris v. Oldham Fiscal Ct.*, 201 F.3d 784, 792 (6th Cir.2000). It is on the "causal connection" prong that Plaintiff's case falters.

First, Plaintiff's Title VII retaliation claim should be dismissed because he did not first exhaust his administrative remedies with the Equal Employment Opportunity Commission ("EEOC"). The EEOC charge, attached to Plaintiff's complaint, alleges only race based discrimination, not retaliation. A plaintiff cannot bring an additional claim that was not raised at the administrative level. 42 U.S.C. § 2000e-5(f)(1); *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361(6th Cir. 2010).

Moreover, in *University of Texas Southwestern Medical Center v.* Nassar  133 S.Ct. 2517, 2533 (2013), the Supreme Court held that to show retaliation in a Title VII case, a plaintiff must show that his protected activity was a "but-for" cause of the adverse action:

> "Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation test stated in § 2000e–2(m). This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer."

As with his discrimination claim, Plaintiff has presented no evidence that he would not have been disciplined or fired in the absence of Defendant's allegedly retaliatory motives. He was a probationary employee with numerous self-admitted violations of

-12-

company policy, including the anti-harassment policy.  Mere temporal proximity of the Plaintiff's alleged complaints and the adverse action–and that is the most he can show– is insufficient to support an inference of retaliation.  *See Nguyen v. City of Cleveland*, 229 F.3d 559, 566 (6th Cir. 2000).  Nor has he shown retaliation under ELCRA, where he must show that the retaliatory motive was a "significant factor" impelling the adverse action. *Polk v. Yellow Freight System, Inc*., 801 F.2d 190, 198 -199 (6th Cir. 1986), citing *Goins v. Ford Motor Co.*, 131 Mich.App. 185, 197-198, 347 N.W.2d 184 (1983).

## IV.   CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment [Doc. #21] be GRANTED.

Any objections to this Report and Recommendation must be filed  within fourteen (14) days of service of a copy hereof, including weekends and intervening holidays, as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.  1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, including weekends and intervening holidays, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

March 3, 2014                         s/R. Steven Whalen
                                      R. STEVEN WHALEN
                                      UNITED STATES MAGISTRATE JUDGE
I hereby certify that a copy of the foregoing document was sen to parties of record on
March 3, 2014, electronically and/or by U.S. Mail.

                                      s/Michael Williams
                                      Case Manager to the
                                      Honorable R. Steven Whalen